UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DOUBLE D TRADE CO., LLC,
and IGOR RYABOSHAPKA,

Plaintiffs,

v.

LAMEX FOODS, INC.,

Defendant.

Case No. C09-0919RSL

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO COMPEL ARBITRATION
AND GRANTING IN PART AND
DENYING IN PART PLAINTIFFS' CROSS-
MOTION FOR PARTIAL SUMMARY
JUDGMENT

## I. Introduction

This matter comes before the Court on defendant Lamex Food's ("Lamex") motion to compel arbitration and stay district court proceedings and a cross-motion for partial summary judgment filed by plaintiffs Double D Trade Company ("DDTC") and Igor Ryaboshapka (collectively, "plaintiffs"). Lamex argues that the dispute is subject to arbitration because the two Lamex-DDTC contracts contain valid arbitration agreements and because Ryaboshapka's personal guaranty falls within the scope of those agreements. Alternatively, Lamex contends that, even if the guaranty does not fall within the scope of the arbitration provisions, the guaranty is still subject to arbitration under general contract principles. Plaintiffs, however, assert that the

Lamex-DDTC contracts do not contain arbitration clauses and that DDTC would not have a basis to bind Ryaboshapka to the Lamex-DDTC arbitration agreements, even if they existed. For the reasons set forth in this order, the Court grants in part and denies in part both motions.[1]

## II. Background

The following facts are undisputed except where otherwise noted. On August 14, 2008, Andrei Melniciuc, a DDTC trader, telephoned an offer to purchase chicken leg quarters to Lamex trader Sergey Korzo. According to Melniciuc, Korzo called him back with Lamex's response, and he and Melniciuc reached an agreement on the product, quantity, quality, price, payment, and delivery terms. He also contends that he asked Korzo to send a sale confirmation. Korzo, on the other hand, asserts that he told Melnicuic that the agreement was not final until Lamex sent a sale confirmation to the buyer.

The next day, Lamex sent DDTC an e-mail containing a sale confirmation and a request for shipping instructions. It stated that Lamex's "Standard Terms and Conditions of Sale,"[2] which were attached, would govern the transaction and requested that DDTC sign and return the "Conditions of Sale." Paragraph 12 of the "Conditions of Sale" provided:

> The offer and these conditions of sale, when accepted by a customer explicitly, or by acceptance of service, or otherwise, shall constitute the entire agreement between the parties, and shall be governed by and construed with the internal laws of the State of Minnesota, except as herein specifically altered. Buyer hereby agrees to submit to arbitration . . . for the resolution of all dispute[s] arising hereunder.

(Revised Harris Aff., Ex. 1, August 26, 2009.) DDTC did not return the form. It did, however, send shipping instructions to Lamex after it received the sale confirmation. Subsequently,

---

[1] Because the matter can be decided on the parties' memoranda and supporting documents, defendant's request for oral argument is denied.

[2] The "Acceptance" section states that "[t]he offer contained in the order is expressly conditioned on Buyer's assent to the conditions." (Revised Harris Aff., Ex. 1.)

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND GRANTING IN PART AND
DENYING IN PART PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2

Lamex began performance.

On September 29, 2008, Melniciuc contacted Korzo for the purpose of purchasing more chicken leg quarters. Melnicuic asserts that he and Korzo reached an agreement on the essential terms of a second contract during their phone conversation, whereas Korzo contends that he told Melnicuic that the terms are subject to final confirmation by Lamex's main office. Both traders anticipated that Lamex would send DDTC a writing. (See Supp. Melniciuc Decl. at ¶ 2, September 25, 2009; Korzo Decl. at ¶ 3, September 21, 2009.) Although both parties acknowledge that Lamex sent DDTC a sale confirmation, DDTC claims that the confirmation did not contain Lamex's "Conditions of Sale." The confirmation requested that DDTC sign and return the confirmation form and stated that "unless otherwise agreed in writing all goods and services are supplied in accordance with the company's standard terms and conditions of sale, a copy of which you have been provided with." (Revised Harris Aff., Ex. 5.) Subsequently, DDTC sent shipping instructions to Lamex, but did not return the confirmation form. Lamex then began performance. Neither Lamex's sale confirmation e-mail nor DDTC's shipping instructions e-mail contained any reference to an oral contract.

In January 2009, DDTC's owner Igor Ryaboshapka personally guaranteed payment of a group of orders "within 14 days after we receive release for the cargo." (Revised Harris Aff., Ex. 7.) In the guaranty letter, Ryaboshapka identified the orders that were guaranteed by invoice number. Subsequently, Lamex released ten containers under the September contract. The guaranty letter does not contain any reference to arbitration or to the August and September contracts between Lamex and DDTC.

On April 24, 2009, Lamex sent Ryaboshapka a letter demanding that he "fulfill the terms of his personal guarantee and remit immediately to Lamex $234,237.80 in partial payment of the cargo released to Double D on January 14, 2009." (Revised Harris Aff., Ex. 8.) Subsequently, Lamex demanded that "(i) DDTC arbitrate various claims by Lamex, including claims for breach

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND GRANTING IN PART AND
DENYING IN PART PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3

1 of contract of the August and September contracts, and (ii) that Ryaboshapka arbitrate a Lamex claim for breach of a personal guaranty." (Compl. ¶ 46.) DDTC and Ryaboshapka filed this lawsuit on July, 30, 2009.

In the plaintiffs' complaint, DDTC requested the following relief: (1) a declaratory judgment that the August and September contracts do not contain valid arbitration clauses (counts I & II); and (2) damages for injuries due to breaches of the September contract, unfair competition, and violations of Washington business regulations (counts IV, V, & VI). (Compl. ¶ ¶ 91, 94, 99, 108.) The only relief that Ryaboshapka is seeking is a declaratory judgment that his personal guaranty does not contain an arbitration agreement (Count III). (Compl. ¶ 81.)

## III. Discussion

On a petition to compel arbitration and stay court proceedings, the Court must grant the motion if there is a valid arbitration agreement and the dispute falls within its scope. <u>Arthur Andersen LLP v. Carlisle</u>, __U.S. __, 129 S.Ct. 1896, 1901-1902 (2009).[3] Because a grant of partial summary judgment denying arbitration has the same effect as denial of a motion to compel arbitration, DDTC's partial summary judgment motion is treated as the functional equivalent of an opposition of Lamex's motion to compel arbitration. <u>Cox v. Ocean View Hotel Corp.</u>, 533 F.3d 1114, 1119 (9th Cir. 2008).

**A. August and September Contracts**

DDTC contends that Lamex's motion to compel arbitration and stay court proceedings should be denied and its own motion for summary judgment on counts I & II granted because the August and September contracts do not contain arbitration agreements. (Melniciuc Decl. at ¶ ¶ 5,6, 7, 14, 15, August 31, 2009.) Courts apply the "ordinary state law principles that govern the formation of contracts" when determining if the parties have agreed to arbitrate an issue. First

---

[3] Both parties agree that the question of substantive arbitrability is governed by the Federal Arbitration Act.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND GRANTING IN PART AND
DENYING IN PART PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4

Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Because no actual conflict exists between the relevant laws or interests of Washington and of Minnesota, the Court does not need to engage in a choice of law analysis and will refrain from ruling on whether the August and September contracts contain valid choice of law provisions. See Rice v. Dow Chem. Co., 124 Wn.2d 205, 210 (1994) (stating that courts will engage in choice of law analysis only if there is an actual conflict of law). When an arbitration agreement is challenged on the ground that no agreement to arbitrate exists between the parties, the court can decide the issue as a matter of law if there is no genuine issue of material fact regarding contract formation. Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,Inc., 925 F.2d 1136, 1141 (9th Cir. 1991) (citation omitted). The nonmoving party is given the benefit of all reasonable doubts and inferences. Id.

DDTC claims that the August and September contracts do not contain valid arbitration clauses because the parties had formed oral contracts that do not contain arbitration agreements before Lamex sent DDTC its sale confirmation forms. (See Melniciuc Decl. at ¶¶ 5, 6, 7, 14, 15.) Lamex, however, asserts that it and DDTC never reached oral agreements and contends that the sale confirmations constituted counteroffers, which DDTC accepted by performance. (See Korzo Decl. at ¶ 3.) To establish that a contract was formed, a party must demonstrate that the parties mutually assented to the essential terms of the agreement and that there is valid consideration. Barnes v. Treece, 15 Wn. App. 437, 440 (1976); Hy-Vee Food Stores, Inc. v. Minn. Dep't. of Health, 705 N.W.2d 181, 185 (Minn. 2005). Courts in both Washington and Minnesota may consider the circumstances surrounding the transaction, the reasonableness of each party's interpretation and the parties' subsequent conduct when there is a dispute regarding contract formation. Keystone Land & Dev. Co. v. Xerox Corp., 353 F.3d 1070, 1073 (9th Cir. 2003); Morrisette v. Harrison Intern. Corp., 486 N.W.2d 424, 427 (Minn. 1992).

To support its claim that the parties entered oral agreements, DDTC has provided Melniciuc's declarations, in which he stated that the traders reached an agreement on the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

essential terms of the sales contracts during their phone conversations. In his first declaration, he stated that the traders "reached [oral] agreement on the essential terms of the [respective] contract: namely quantity, quality, price, payment, and delivery/shipping terms." (Melniciuc Decl. at ¶ 6.) In a supplemental declaration, Melnicuic refers to the "orally agreed terms of sale," but, again, fails to describe any of the specific terms or conditions of the alleged oral contracts. (Supp. Meniciuc Decl. at ¶ 2.) Melniciuc's conclusory statements that the traders orally agreed on the essential terms of the contracts are not enough to persuade the Court that there is a genuine issue of fact over whether the August and September contracts contain valid arbitration agreements. See Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 24 (1993) (articulating that conclusory statements are insufficient to create a genuine issue of material fact); Nowicki v. Benson Properties, 402 N.W.2d 205, 208 (Minn. 1987) (stating that conclusory statements are not enough to create a genuine issue of fact).

Lamex has submitted Korzo's declaration to substantiate its assertion that the traders did not form oral contracts. In his declaration, Korzo stated that he told Melnicuic that Lamex has not assented to a contract with DDTC until Lamex has sent DDTC final written confirmation of the agreement. (Korzo Decl. at ¶ 3.) The other information in the record uniformly supports Lamex's contention that the contracts were not formed orally.

The fact that the e-mails exchanged between the parties after the traders' phone conversations reference Lamex's sale confirmation multiple times, but do not allude to the existence of the alleged oral agreements, supports the inference that the traders did not form oral contracts. (See Revised Harris Aff., Exs. 1, 2, 3, 5.) There is also no evidence on the record that either party began performance under the respective contract until after DDTC received Lamex's sale confirmation. Finally, Lamex's "Conditions of Sale" contain an integration clause, which strongly supports the conclusion that Lamex's sale confirmations were the complete agreement between the parties. See Olsen Media v. Energy Sciences, Inc., 32 Wn. App. 579, 584 (1982)

(stating that an integration clause strongly supports the conclusion that the parties' agreement was fully integrated); Taylor v. More, 263 N.W. 537, 539 (Minn. 1935) (explaining that an integration clause is evidence that the contract is the entire agreement between the parties). When the competing declarations by Melnicuic and Korzo are viewed in light of the circumstances surrounding the transaction and the parties' subsequent conduct, a reasonable trier of fact could not conclude that the parties formed oral contracts.

The Court now considers whether Lamex accepted DDTC's oral offers by e-mailing its sale confirmations. The sale confirmations state that Lamex's acceptance is expressly conditioned on DDTC's assent to the terms contained in the "Conditions of Sale." Because the conditional nature of Lamex's acceptance was sufficient to notify DDTC that Lamex was unwilling to proceed with the transaction unless the additional terms were included in the contract, its sale confirmations constituted counteroffers under RCW 62A.2-207(1) and Minn. Stat. § 336.2-207(1). See Venmar Ventilation, Inc. v. Von Weise USA, Inc., 2009 WL 799610, 11 (D. Minn. 2009); Tacoma Fixture Co., Inc. v. Rudd Co., Inc., 142 Wn. App. 547, 552-553 (2008).

Each of Lamex's sale confirmations specified that DDTC could accept the counteroffer by returning the form or by acknowledging acceptance through e-mail correspondence. (See Revised Harris Aff., Exs. 1, 5.) When DDTC e-mailed Lamex shipping instructions that referenced the respective sale confirmation form, DDTC demonstrated its acceptance of the counteroffer. Furthermore, after receiving a copy of Lamex's "Conditions of Sale" on August 15, 2008, DDTC did not respond to Lamex's sale confirmation with its own written terms, object to any of Lamex's terms, or reject Lamex's products. Therefore, given that the parties agree that Lamex's "Conditions of Sale" was attached to August sale confirmation, the August contract contains a valid arbitration clause.

Even though the September sale confirmation did not contain Lamex's "Conditions of

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND GRANTING IN PART AND
DENYING IN PART PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7

1 Sale," its terms were incorporated into the September contract by reference. It is undisputed that
2 the sale confirmation referenced the document in large, bold print. (See Revised Harris Aff., Ex.
3 5.) When a contract refers to another document, that document can constructively become part
4 of the contract. Santos v. Sinclair, 76 Wn. App. 320, 325 (1994); Winter v. Liles, 354 N.W.2d
5 70, 73 (Minn. 1984). In order for a document to be incorporated into a contract by reference, it
6 must be clear that the parties to the contract had knowledge of and assented to the incorporated
7 terms.[4] Western Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc., 102 Wn. App.
8 488, 494 (2000), review denied, 143 Wn.2d 1003 (2001).

9 Lamex's September sale confirmation clearly states that the sale is governed by the terms
10 of Lamex's "Conditions of Sale." Furthermore, when DDTC sent Lamex shipping instructions
11 for the shipment under the September contract, it was aware of the terms of Lamex's
12 "Conditions of Sale" from its prior dealings with Lamex. As discussed above, DDTC evinced
13 assent to the contract when it sent Lamex shipping instructions and also when it accepted
14 Lamex's products. Therefore, regardless of whether the September sale confirmation contained
15 a copy of Lamex's "Conditions of Sale," the evidence shows that DDTC had knowledge of and
16 assented to Lamex's "Conditions of Sale." As such, the Court finds that the September contract
17 contains a valid arbitration clause.

18 Once the court determines that the arbitration provision is valid, the party resisting
19 arbitration has the burden of proving that the dispute falls outside the scope of the provision.
20 Hoffman v. Citibank (South Dakota), N.A., 546 F.3d 1078, 1080 (9th Cir. 2008). The arbitration
21 provision in Lamex's "Conditions of Sale" requires the buyer "to submit to arbitration . . . for the
22 resolution of all dispute[s] arising hereunder." (Revised Harris Aff., Ex 1.) In Mediterranean

---

[4] In Minnesota, when a writing explicitly incorporates another document by reference, the latter is incorporated into the former for the purpose and extent of the reference. In re Le Borius' Estate, 28 N.W.2d 157, 160 (Minn. 1947).

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND GRANTING IN PART AND
DENYING IN PART PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8

1  Enter., Inc. v. Ssangyong Corp., the United States Court of Appeals for the Ninth Circuit
2  interpreted an arbitration clause providing for disputes "arising hereunder" as being broad
3  enough to include claims "relating to the interpretation of the contract and matters of
4  performance." 708 F.2d 1458, 1464 (9th Cir. 1983). Except for the claim seeking a declaratory
5  judgment that there is no arbitration agreement between Lamex and Ryaboshapka, all counts
6  contained in the plaintiffs' complaint relate to interpretation of the August and September
7  contracts and matters of performance. (See Compl.) Therefore, they fall within the scope of the
8  arbitration clause contained in the August and September contracts.

**B. Igor Ryaboshapka's Personal Guaranty**

Lamex argues that Ryaboshapka's personal guaranty is subject to arbitration because the two Lamex-DDTC contracts and Ryaboshapka's personal guaranty are closely intertwined and because the guaranty references and guarantees order numbers from the two Lamex-DDTC contracts. Because the arbitration provision in the August and September contracts specifies that it is the "Buyer" who agrees to arbitrate all disputes "arising hereunder," (see Revised Harris Aff., Ex. 1.), it is not broad enough to cover disputes between Lamex and a third party, even if the dispute is related to sales subject to the arbitration agreement.

Although an arbitration agreement generally is not enforceable against a third party, there are circumstances where a third party may be bound under ordinary principles of contract and agency. Arthur Andersen LLP, 129 S.Ct. at 1901. Lamex is asserting that the arbitration provision is enforceable against Ryaboshapka on equitable estoppel and incorporation by reference grounds. For a document to become part of a contract under the incorporation by reference doctrine, the contract must explicitly incorporate the other document. Western Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc., 102 Wn. App. at 494; In re Le Borius' Estate, 28 N.W.2d at 160. Ryaboshapka's personal guaranty does not explicitly refer to

the August and September contracts or to Lamex's "Conditions of Sale." (See Revised Harris Aff., Ex. 7.) In fact, the guaranty is expressly limited to the payment of a specific group of orders. (Id., Ex. 7.) Furthermore, Lamex has provided no evidence that Ryaboshapka assented to the incorporation of the terms of the Lamex-DDTC contract or to the incorporation of Lamex's "Conditions of Sale." Lamex has failed to show that terms of the August and September contracts were incorporated into the personal guaranty by reference to the terms of the Lamex-DDTC contracts or to Lamex's "Conditions of Sale."

To prevail against a nonsignatory on an equitable estoppel theory, the party must show that the nonsignatory "knowingly exploit[ed] the agreement containing the arbitration clause despite having never signed the agreement."[5] Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006). Ryaboshapka's claim is based entirely on his personal guaranty. Furthermore, there is no evidence on the record that Ryaboshapka has sought to enforce the terms of the agreements or to take advantage of them. Because Ryaboshapka has not knowingly exploited the August and September contracts, he is not bound by their arbitration agreements under the equitable estoppel doctrine.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART plaintiffs' motion for partial summary judgment (Dkt. # 18) and GRANTS IN PART and DENIES IN PART the defendant's motion to compel arbitration (Dkt. # 11). Specifically, the Court DENIES Lamex's motion to the extent it seeks to compel arbitration of Ryaboshapka's claim and GRANTS the plaintiffs' cross-motion for summary judgment on the claim seeking a

---

[5] Although a nonsignatory can enforce an arbitration agreement against a signatory because of close relationships between the entities involved and between the alleged wrongs and the contract containing the arbitration agreement, courts have not compelled nonsignatories to arbitrate under this theory. Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1046 (9th Cir. 2009).

declaratory judgment that there is no arbitration agreement between Ryaboshapka and Lamex. The Court compels arbitration of plaintiffs' remaining claims and stays the matter pending the completion of arbitration. The Clerk of the Court is directed to remove the matter from the Court's active caseload. After the conclusion of the arbitration, the parties may request that the Court reopen the case if warranted.

DATED this 14th day of December, 2009.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT - 11